OPINION
{¶ 1} Defendant-appellant Darell Nash, Sr. appeals his conviction from the Stark County Court of Common Pleas on one count of improperly discharging a firearm at or into a habitation, with a firearm specification, and one count of felonious assault, with a firearm specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 20, 2001, the Stark County Grand Jury indicted appellant on one count of improperly discharging a firearm at or into a habitation or in a school safety zone in violation of R.C. 2923.161(A)(1), a felony of the second degree, and one count of felonious assault in violation of R.C. 2903.11(A)(2), also a felony of the second degree. Both of the charges included firearm specifications. At his arraignment on January 11, 2002, appellant entered a plea of not guilty to the charges contained in the indictment. Thereafter, a jury trial commenced on March 4, 2002. The following evidence was adduced at trial.
 {¶ 3} On December 11, 2001, Connie Nash, appellant's wife, returned home after working her shift at a nursing home. Connie was angry since, while at work, she had received a telephone call from appellant's girlfriend. When Connie arrived at home, appellant and his friend, Robert Gilmore, were sitting at the kitchen table playing cards. Connie told Gilmore to leave so that she could talk to appellant.
 {¶ 4} After appellant bumped her with his chair while proceeding to stand up, Connie "started swinging on him." Transcript at 94. As she was "cussing and swinging", Connie tripped over a highchair and fell backwards. Transcript at 95. After hearing the commotion, the couple's son, Darell Nash. Jr., and nephew, William Jeter, ran up from the basement to see what was going on and found appellant and Connie yelling and screaming at each other. Appellant then ran upstairs and came back with a loaded .9 millimeter handgun. When he saw the gun, Darell Nash, Jr. grabbed appellant, causing the handgun to fire towards the floor. Appellant then followed Connie into her daughter's bedroom. Once again, Darell Nash, Jr, grabbed appellant and the handgun went off. This time, the bullet lodged in the wall. Appellant, after putting the gun back upstairs, drove away from the residence.
 {¶ 5} While the police, who had been called by Connie, were at the Nash residence, appellant telephoned. Detective William Yarbrough of the Perry Township Police Department listened in on the call between appellant and his son. According to the Detective, appellant "said she did it this time. You can tell her she doesn't have a job any longer because I'm going to F'ing kill her." Transcript at 201. During the telephone conversation, appellant also asked his son whether Connie had "cool down yet so that he could come home and talk things over." Transcript at 136.
 {¶ 6} During his statement to the police, appellant told the police that he went upstairs and got the gun in order to scare his wife. However, appellant testified at trial that his "intention was to take the gun out of the house." Transcript at 244. Appellant, during his testimony, also testified that the handgun went off accidentally and denied making the threats that the Detective overheard him making during the telephone call.
 {¶ 7} At the conclusion of the evidence and the end of deliberations, the jury, on March 5, 2002, found appellant guilty of improperly discharging a firearm at or into a habitation and felonious assault. The jury also found that appellant had a firearm on or about his person or under his control while committing the above offenses. As memorialized in a Judgment Entry filed on March 11, 2002, appellant was sentenced to a term of two years imprisonment on each charge, to be served concurrently, and to a mandatory consecutive term of three years on the firearm specifications. Thus, appellant's aggregate sentence was five years in prison.
 {¶ 8} Appellant now raises the following assignment of error on appeal:
 {¶ 9} "Appellant's convictions are against the manifest weight of the evidence."
 I {¶ 10} Appellant, in his sole assignment of error, argues that his convictions for improperly discharging a firearm at or into a habitation and felonious assault are against the manifest weight of the evidence.
 {¶ 11} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 78 N.E.2d 541 (citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 12} In the case sub judice, appellant was convicted of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161. Such section states, in relevant part, as follows:
 {¶ 13} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 14} "(1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual; . . ."
 {¶ 15} An occupied structure is any house which, at the time of the offense is, "* * * occupied as the permanent or temporary habitation of any person, whether or not any person is actually present." R.C. § 2909.01(C).
 {¶ 16} Appellant, in his brief, argues, in part, that his conviction for improperly discharging a firearm at or into a habitation is against the manifest weight of the evidence since appellant never discharged a firearm "at or into" the house. Appellant emphasizes that he fired the handgun in this case while in the house and that the "use of the `drive by shooting statute' on the facts of the instant case is both ludicrous and patently contrary to the statutory intent."
 {¶ 17} As is stated above, R.C. 2923.161(A)(1) prohibits an individual from discharging a firearm "at or into an occupied structure". In contrast, subsection (A)(2) of R.C. 2923.161(A)(2) prohibits an individual from discharging a firearm "at, in or into" a school safety zone. (Emphasis added). Had the drafters of R.C. 2923.161
intended to prohibit discharging a firearm in a habitation, they could have, and presumably would have, included the same language in subsection (A)(1) as in (A)(2). The expression of one thing implies the exclusion of another ("expressio unius est exclusio alterius"). See, e.g., Green,Inc. v. Smith (1974), 40 Ohio App.2d 30, 32, 317 N.E.2d 227, 229. Since the word "in" is not contained in R.C. 2923.161(A)(1) and since there is no evidence that appellant discharged his firearm at or into a habitation, appellant's conviction for improperly discharging a firearm at or into a habitation is against the manifest weight of the evidence.[1]
 {¶ 18} In contrast, we find that appellant's conviction for felonious assault in violation of R.C. 2903.11(A)(2) is not against the manifest weight of the evidence. Such statute provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2901.22(B) defines "knowingly" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 19} While appellant argues that there is no evidence that he knowingly attempted to cause physical harm to his wife, we disagree. Upon our review of the record, we find that appellant acted knowingly when, after arguing with his wife, he went upstairs to retrieve the gun. As is stated above, appellant told the police that he had retrieved the same in order to scare his wife. We concur with appellee that "[r]eturning to the argument in this situation gives rise to a probable result that the gun may go off." In short, upon our review of the record, we cannot say that the jury, by convicting appellant of felonious assault, lost its way so as to create a manifest miscarriage of justice.
 {¶ 20} Appellant's first assignment of error is, therefore, sustained in part and overruled in part.
 {¶ 21} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed in part.
By Edwards, J., Hoffman, P.J. dissents, Farmer, J. concurs.
In Re: Manifest Weight — Improperly Discharging a firearm.
[1] We note that while appellee, in its brief, points out that R.C.2923.161 "does not specifically make reference to the location of the shooter," appellee notes that R.C. 2923.161(A)(2) expressly prohibits discharging a firearm "at, in or into" a school safety zone.